HOBSON, Judge.
Appellant, plaintiff below, filed its complaint against appellee, defendant below, charging that it had been constructively evicted from premises leased to it by the defendant. Plaintiff leased premises from the defendant in the terminal building at Tampa International Airport in which it conducted a retail business. The lease expired on July 20, 1972, when plaintiff had the right to extend the lease for an additional ten years ending July 20, 1982. The alleged constructive eviction occurred on April 15, 1971, when the defendant moved all of the passenger facilities to the new Tampa International Airport Terminal Complex. Plaintiff alleged that its business and beneficial enjoyment of the premises depended upon a flow of aircraft and related customers, which business and beneficial enjoyment were destroyed upon the closing and abandoning of the premises as an airlines terminal building. The plaintiff abandoned the premises on April 19, 1971.
After a nonjury trial the court entered its final judgment in favor of the defendant on the basis that the plaintiff either had actual or implied notice that the defendant might construct a new terminal building before the expiration of the term of the lease.
The original lease was entered into on May 12, 1952. The initial term of the lease was for a period of ten years commencing July 20, 1952, and contained a provision giving the plaintiff an option to renew for a period of ten years. On February 10, 1958, a supplemental agreement was entered into between the parties. Said supplemental agreement contains the provisions upon which the lower court entered its final judgment. The plaintiff appeals the final judgment and the defendant cross-appeals a portion of the final judgment which held that the plaintiff was entitled to renew the lease for a period of ten years upon the termination thereof on July 20, 1972. We affirm the final judgment, thereby making the cross-appeal moot.
The trial court entered a comprehensive 20-page final judgment setting forth its reasoning in reaching its decision. The provisions of the supplemental agreement of February 10, 1958, upon which the trial court reached its conclusion that the plaintiff either had actual or implied notice that the defendant might construct a new terminal building before the expiration of the term of the lease as modified by the 1958 supplemental agreement, are paragraphs 1(d) and 1(f) which provide:
“(d) In the event that the business operations of the Lessee and Assignee under the terms and provisions of the original lease or any extention thereof shall be acceptable to the Lessor in its sole judgment and there shall be built or constructed during the term of this lease at Tampa International Airport and in the vicinity of the Airlines Terminal Building on Columbus Drive an additional building for use as a passenger terminal and there shall be available in such additional building an area or space for the purpose of a lunchroom or restaurant of the type and character operated by the Lessee and Assignee under this lease or any space for shops selling merchandise such as is dispensed by the Lessee and Assignee under this lease, or any coin operated device or dispensing machines, (other than toilet facilities), of the type and character operated by the Lessee and Assignee under this lease, the Lessor agrees to lease such additional space or to license the operation of the aforesaid coin operated devices or dispensing machines (other than toilet facilities) to the Lessee at a rental and upon such covenants and conditions as may be determined or required by the Lessor. In the event that any such space or right shall become available, and the operations of the Lessee and Assignee shall be acceptable to the Lessor as aforesaid, the Lessor shall notify the Lessee and Assignee *838 in writing by registered mail giving the Lessee and Assignee fifteen (15) days in which to determine whether the Lessee and Assignee wishes to lease such space and if the Lessee and Assignee, within fifteen (15) days after receiving such written notice, shall not enter into a lease or a license agreement with the Lessor at a rental and upon covenants and conditions as may be determined or required by the Lessor, then the Lessor will have the right to lease such space and such right to any other third person or persons, firm or corporation that the Lessor may determine.”
“(f) During the remainder of the term of the original lease, as amended by this supplement, if the Lessor determines at any time to relocate the space leased to the Lessee for its business purposes, the Lessor shall have full power and authority to make provision in any present or future Airline Terminal Building at Tampa International Airport of equivalent space for the operation of the Lessee’s business and upon giving the Lessee -days notice in writing, the Lessee covenants and agrees to move its business operations to the newly designated space or area and to pay all expense of such moving, including all costs and expense that may be necessary to furnish and equip the new space or area with machinery, equipment, furnishings or any other matter that may be required in the operation of the Lessee’s business; the sole obligation of the Lessor is to furnish to the Lessee at such new location, equivalent space for the operation of the Lessee’s business.”
The trial court in its final judgment held:
“It is the opinion of this Court that the provisions of the above quoted paragraphs 1(d) and 1(f) of said Supplemental Agreement placed the Plaintiff on notice of the fact that the Defendant had the right to and that it might construct another terminal during the term of the lease as modified by said Supplemental Agreement or during the period covered by the option to renew. Consider the following portion of said paragraph 1(d):
- - - - and there shall be built or constructed during the term of this lease at Tampa International Airport and in the vicinity of the Airlines Terminal Building on Columbus Drive an additional building for use as a passenger terminal - - - -’
This language certainly placed the Plaintiff on notice that the Defendant might construct another passenger terminal during the term of the lease. Counsel for the Plaintiff, although not conceding this, has argued that the above language would, in any event, have to be construed as requiring the Defendant to maintain the then existing terminal as an airport terminal because of the words ‘an additional building for use as a passenger terminal.’ Plaintiff’s counsel argues that the word ‘additional’ as used therein must be construed as modifying or applying to the words ‘passenger terminal’ rather than the word ‘building’ and suggests that at the very most this language might be construed to permit the Defendant to build another terminal building to operate in conjunction with the terminal then in existence and, in counsel’s words, move ‘one or two’ airlines to the additional terminal. The problems which would arise, so far as this action is concerned, by the adoption of this suggestion will be commented upon hereinafter.
“But assuming for the sake of argument that the last above quoted language from said paragraph 1(d) is construed in accordance with said suggestion of Plaintiff’s counsel, what effect is to be given to the following language from paragraph 1(f) of said Supplement Agreement of February 10th, 1958?
“ ‘During the remainder of the term of the original lease as amended by *839 this supplement, if the Lessor determines at any time to relocate the space leased to the Lessee for its business purposes, the Lessor shall have full power and authority to make provision in any present or future Airline Terminal Building at Tampa International Airport of equivalent space - - -
Surely this language cannot be construed as being limited to an ‘additional terminal’ in the context of the argument of Plaintiff’s counsel with reference to the language of paragraph 1(d) as above mentioned. The portion of paragraph 1(f) above quoted has to suggest that Plaintiff was aware on February 10th, 1958 of the possibility of a ‘future Airline Terminal Building at Tampa International Airport’ being constructed by the Defendant ‘during the remainder of the term of the original lease as amended by said supplement.’ This is exactly what did happen and what the Plaintiff now contends resulted in it being constructively evicted from the premises so leased to it.
“The language in paragraph 1(f) of said Supplemental Agreement contains no reference to an ‘additional building’ as was the case in paragraph 1(d) thereof. One would think that the words ‘future Airline Terminal Building - - - during the remainder of the term of the original lease as amended by this supplement’ fairly shout the fact that the Defendant was at least contemplating a new terminal building as far back as 1958, and that if this took place, it, the Defendant, could require the Plaintiff to move its business operations to such new terminal. Despite this fact, the Plaintiff appears to have been content to accept the advantages which apparently accrued to it under the Supplemental Agreement of February 10th, 1958 without raising any question as to what would happen if such a new terminal was constructed. There has been no suggestion in the record in this case that the Defendant took any unfair advantage of the Plaintiff in drafting the provisions of the said Supplemental Agreement. In fact, one of the depositions of William Earl Thompson, the attorney for the Defendant in 1958, indicates that there were numerous conferences between him and representatives of the Plaintiff before the language of said Supplemental Agreement was finally acceptable to the Plaintiff.”
“It is the opinion of this Court that after the execution of the Supplemental Agreement of February 10th, 1958 the Plaintiff either had actual or implied notice that the Defendant might construct a new terminal building before the expiration of the term of the lease, as so modified, or of the option contained therein. Such notice should have also charged the Plaintiff with knowledge of what effects would likely result from the construction of a new terminal. It is hardly reasonable to think that the Defendant would have erected a new terminal just to provide the same facilities as already existed in the old one, and therefore it would be reasonable to expect that if it erected a new terminal with improved facilities for passengers and aircraft that the airlines using the old facilities would move to the new one. It is also reasonable, in the opinion of this Court to assume that the Plaintiff realized that if any of the airlines had attempted to continue to operate out of the old terminal, they would have quickly been forced to move to the new one because of dissatisfaction of its customers. Had the Plaintiff desired to protect itself against the effects of a new terminal building it could have done so by a covenant on the part of the Defendant not to build a new terminal during the term of its lease and option at the time of the entry into the Supplemental Agreement of February 10th, 1958. It is conceivable that the reason that the Plaintiff did not do this was because it felt that under the provisions of said Supplemental Agreement it had an option to obtain space in any new terminal (a *840 matter which has been previously decided against the Plaintiff in the case of Madison Drug Company v. Hillsborough County Aviation Aiithority — Case No: 175848 of this Court from which decision an appeal was taken and subsequently voluntarily dismissed) but this would have afforded no basis for the claim of constructive eviction from the former terminal. Rather this contention would have been a recognition on the part of the Plaintiff of the right of the Defendant to construct and operate the new terminal.”
We have carefully reviewed the lease and 1958 supplement thereto, together with the entire record and briefs, and hold that the trial court was eminently correct. The other issues raised in this appeal have been carefully considered and found to be without merit. Therefore, the final judgment appealed is.
AFFIRMED.
McNULTY, C. J., and SCHEB, J., concur.